UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X
UMBERTA DAY,

Plaintiff,

**MEMORANDUM & ORDER**

-against-

07 CV 157 (RJD)

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

Defendant.[1]
---------------------------------------------------X
DEARIE, Chief Judge.

Pursuant to 42 U.S.C. § 405(g), plaintiff Umberta Day seeks to set aside the Commissioner's determination that she was not disabled within the meaning of the Social Security Act. The parties move for judgment on the pleadings. For the reasons stated below, the case is remanded for further proceedings consistent with this opinion.

## PROCEDURAL HISTORY[2]

On June 26, 2002, plaintiff applied for Disability Insurance Benefits, citing an onset date of January 1, 1997. Tr. 75-78. On November 19, 2002, the Social Security Administration denied her claim. Tr. 64-67. On December 12, 2002, plaintiff requested a hearing before an Administrative Law Judge. Tr. 68. The first hearing was held before ALJ Manuel Cofresi on August 12, 2003. Tr. 335-360. The hearing was continued in order to obtain tax filings and

---

[1] On February 12, 2007, Michael J. Astrue became Commissioner of Social Security. He is hereby substituted for Jo Anne B. Barnhart as defendant pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

[2] The factual background of this case is summarized without any substantive dissimilarities in both sets of briefs and therefore is omitted here.

further medical records and a second hearing was held before the same ALJ on June 1, 2004. Tr. 361-380. The ALJ continued the hearing again in order to arrange consultative examinations and obtain clarification regarding the substance of treatment notes submitted by the treating physician and the final hearing was held on April 25, 2005. Tr. 381-393.

According to the ALJ's review of plaintiff's earnings record, "she has earned sufficient quarters of coverage to remain insured only through December 31, 2000. Thus, in order to become entitled to Disability Insurance Benefits, the claimant must demonstrate that she was under a disability on or before that date." Tr. 18. On September 7, 2005, the ALJ ruled that plaintiff did not qualify for benefits. Tr. 17-23. On November 22, 2006, plaintiff's request for review was denied by the Appeals Council, and the ALJ's ruling became the final decision of the Commissioner. Tr. 4-7. This action followed on January 12, 2007.

## DISCUSSION

### A. Standard of Review

A court reviewing a decision of the Commissioner must determine whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." Green-Younger v. Barnhart, 335 F.3d 99, 105 (2d Cir. 2003) (quoting Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

## B. The ALJ's Decision

To receive federal disability benefits, an applicant must be "disabled" within the meaning of the Social Security Act. An applicant is "disabled" if she can demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months . . ." 42 U.S.C. § 423(d)(1)(A). His impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). In evaluating disability claims, the ALJ is required to follow a five-step process.[3] The burden of persuasion rests on the claimant at steps one through four but shifts to the Commissioner at step five. See Curry, 209 F.3d at 122-23.

The ALJ found at step one that plaintiff had not engaged in any substantial gainful activity during the period in question. Tr. 19. At step two, the ALJ found that "[t]he medical evidence indicates that the claimant has substance abuse disorder, and affective disorder, impairments that are 'sever' within the meaning of the Regulations . . ." Id. Nevertheless, at step

---

[3] "First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience. . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform." Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (citation omitted).

three, the ALJ held that these impairments did not meet or medically equal a listed impairment. Id. At the fourth step, the ALJ found that "the evidence does support a finding that when considering the claimant's alcohol and drug abuse, she was unable to return to past relevant work [as a graphic designer]." Id. However, the ALJ then determined that "absent drug and alcohol abuse, the claimant was capable of returning to past relevant work," Tr. 22, and that "[t]herefore, in accordance with Section 105 of Public Law 104-121 enacted on March 29, 1966, the claimant is not entitled for disability insurance benefits under Title II of the Act."

The ALJ reviewed and summarized much of the medical evidence in the record before concluding that:

> [1] Based on the testimony of the medical expert, the undersigned concludes that the claimant did not meet the criteria of Listing 12.04 during the period under consideration. [2] The claimant's attorney was given the opportunity to subpoena the personal appearance of Dr. Conciatori, but did not do so. Accordingly, the claimant has not carried the burden of proof. [3] Morever, during the period under consideration, the record is replete with documentation of drug and alcohol abuse, and the claimant has readily admitted to continued alcohol abuse. In spite of the opinion of Dr. Conciatori, there is no evidence to the effect that absent drug and alcohol abuse, the claimant suffered from a major depressive disorder.

Tr. 21 (bracketed numbers added). This paragraph summarizes the ALJ's holding and we address each claim in the order made therein.

**1. The Medical Expert**

The medical expert referred to is Dr. Leslie Fine. When asked by the ALJ to provide her "overall assessment of the claimant's medical condition," Tr. 384, she responded: "[i]n view of the later exhibits by consultants and treating doctors, I believe the claimant meets 12.04," Tr. 386. Later, when asked by plaintiff's lawyer whether it was her opinion that 12.04 was

met prior to 2002, Dr. Fine responded that "I would have to say yes, according to Dr. Catchetori." Tr. 389. In response, the ALJ pointed out to Dr. Fine the lapse in treatment by Dr. Conciatori between 1997 and 2000, and then asked:

> Q So Doctor, basically what you're saying is . . . . in answer to the attorney's question, is, you're speculating. Are you not?"
> A I don't have any - - I have only that '02 note.
> Q Right. You have nothing to point to in terms of evidence other than you're speculating when you answered his question that she was probably - - she probably met 12.04 sometime before 2002. Isn't that what you're saying?
> A Correct. Correct.
> Q Yeah. That's unacceptable.

Tr. 390.

While the ALJ may have succeeded in convincing Dr. Fine to cabin her initial conclusion, it is difficult to understand how this testimony, which otherwise confirms and in no part disputes the medical evidence asserted by plaintiff, could on its own constitute a sufficient basis for the ALJ's conclusion that plaintiff did not meet 12.04 before December 31, 2000, or at any other time. An ALJ may afford a treating physician's opinion less than controlling weight when it is contradicted by other substantial evidence in the record, including the opinions of medical experts. Halloran, 362 F.3d at 32 (2d Cir. 2004). However, in this case Dr. Fine's testimony does not contradict the treating physician's opinion.

**2. Treating Source Dr. Conciatori**

**a. Treating Physician Rule**

The Social Security Act recognizes a "rule of deference to the views of the physician who has engaged in the primary treatment of the claimant." Green-Younger, 335 F.3d at 106 (2d Cir. 2003) . The opinion of a treating physician is "given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence." Rosa v. Callahan, 168

F.3d 72, 78-79 (2d Cir. 1999). If the ALJ decides not to grant controlling weight to the opinion of a treating physician, he must supply "good reasons" for that assessment. Halloran, 362 F.3d at 32.[4]

Dr. Robert Conciatori began psychiatric treatment of plaintiff for a "nervous disorder" in 1996. Dr. Conciatori submitted various evaluations, letters and treatment notes to the ALJ, all supporting his assessment that plaintiff "is not able to work and is totally disabled." Tr. 139. These documents include: an August 30, 2002 Psychiatric/Psychological Impairment Questionnaire diagnosing plaintiff with "Major Depression", Tr. 149-156; a November 5, 2002 letter stating that plaintiff's "Major Depression is free standing and not, in my opinion, connected in any way to polysubstance abuse," Tr. 160; a December 12, 2002 Psychiatric Evaluation stating in pertinent part that "her depression began before, and has persisted well after, her last drink" and acknowledging that "there had been a gap in treatment between 1998 and 2002", Tr. 179; as well as several pages of generally illegible treatment notes, Tr. 223-244.

The ALJ concluded that, in light of plaintiff's failure "to subpoena the personal appearance of Dr. Conciatori" and the "documentation of drug and alcohol abuse" during the period under consideration, "in consideration of Social Security Ruling 96-2p, the undersigned does not give Dr. Conciatori's opinion controlling weight. See Schall v. Apfel [sic]." Tr. 21. Social Security Ruling 96-2p is a policy interpretation by the Social Security Administration

---

[4] An ALJ who fails to accord controlling weight to the opinion of a treating physician must consider various "factors," including: "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." Id. (citing 20 C.F.R. § 404.1527(d)(2)).

whose purpose is to "explain terms used in our regulations on evaluating medical opinions concerning when treating source medical opinions are entitled to controlling weight, and to clarify how the policy is applied." The policy interpretation of that ruling states that:

> a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927.

This admonition is also supported by the Second Circuit opinion to which the ALJ cited, Schaal v. Apfel. That case held that "[t]he lack of clinical findings complained of by the ALJ did not justify the failure to assign at least some weight to [the treating source's] opinion . . ." 134 F.3d 496, 505 (2d Cir. 1998). The Court now turns its attention to the reasons given by the ALJ for not according controlling weight to Dr. Conciatori's opinion.

**b. Duty to Subpoena**

At the first hearing on this matter, the ALJ stated that he was "seeking to at least have from the treating source . . . who indicates a treatment for during the actual period of adjudication. The treatment notes, which may be dispositive of this case." Tr. 344-45. After receipt of those treatment notes, the ALJ remarked at the second hearing that they were largely illegible and stated that "[w]hen doctors think they're going to just send in records that cannot be deciphered even among the best of the best of hieroglyphics experts, I am going to hold that against the importance of that document." Tr. 365. Later in that same hearing the judge presented plaintiff's lawyer with the following choice:

> You tell me what you - - how you want us to handle it. Do we get him to, to write this so that we can read it, or we bring him in and he can decipher it for us. . . . Because then when they don't come in, I will extend them an invitation and enforce it. . . . He's making my blood pressure boil this morning.

Tr. 375. After plaintiff's lawyer suggested that Dr. Conciatori would not likely respond to a request to rewrite his notes, the ALJ concluded: "We'll extend him an invitation to come in and join us." Tr. 376. Plaintiff's lawyer then sought confirmation, asking: "So you, you're going to subpoena - -," to which the ALJ responded: "I'm going to send him an invitation to join us." Tr. 376. At the end of the third and final hearing, plaintiff's lawyer asked the ALJ: "Well, I would like to - you subpoenaed Catchetori. Is that correct, Doctor [sic]?" The ALJ responded: "That's correct. . . . If you want to bring him in, we'll bring him in then. . . . But I can't be chasing these people forever." Tr. 392.

The ALJ states that the plaintiff was given opportunity to subpoena Dr. Conciatori but failed to do so and that therefore she failed to meet her burden of proof. However, the Social Security Act charges the Commissioner with the responsibility to "make every reasonable effort to obtain from the individual's treating physician . . . all medical evidence . . . necessary in order to properly make [a determination of disability]. . ." 42 U.S.C. § 423(d)(5)(B). See also, 20 C.F.R. § 404.950(d)(1); Rosa, 168 F.3d at 79 (noting that "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history . . ."). In addition, 20 C.F.R.§ 404.1512(e) clarifies that:

> We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source.

Notwithstanding his own statements, it is not clear from the record whether the ALJ in

fact subpoenaed Dr. Conciatori to appear before him.[5] If in fact he did, he failed to explain why that subpoena was not enforced. See Treadwell, 698 F.2d at 142 ("In the case of noncompliance with a subpoena, the agency has recognized the desirability of having the ALJ articulate the basis for concluding that enforcement is or is not necessary.") If he did not, then it was inappropriate for the ALJ to cite *plaintiff's failure* to produce Dr. Conciatori as a ground for his ruling.

**c. Retrospective Diagnosis**

It is clearly stated law in the Second Circuit that "while a treating physician's retrospective diagnosis is not conclusive, it is entitled to controlling weight unless it is contradicted by other medical evidence or 'overwhelmingly compelling' non-medical evidence." Byam v. Barnhart, 336 F.3d 172, 183 (2d Cir. 2003); see also, Rivera v. Sullivan, 923 F.2d 964 (2d Cir. 1991) (reviewing Second Circuit law on retrospective diagnosis and reversing denial of benefits where retrospective diagnosis of treating physical not given sufficient weight with regard to degenerative condition).

In this case, Dr. Conciatori's opinion was based on his evaluation of the plaintiff both befrore and after the relevant dates. As a result, it appears not to be "retroactive" in the classic sense. Nevertheless, the ALJ appears to have been highly concerned about the lack of treatment

[5] The ALJ's decision states that "[s]ubpoenas were issued for Dr. Conciatori and Dr. Khesina; however, in spite of the Office of Hearings and Appeals best efforts, to date we have not received mental status examinations, treatment notes, or progress reports for the period 1997 to 2000." Tr. 18. The subpoenas referred to here appear to be for documents only and not for personal appearances. See Tr. 200, 219. The ALJ's conclusion that no such documents were received for the period 1997 to 2000 is contradicted in part by the record which includes treatment notes from Dr. Conciatori dated up until December of 1998, Tr. 234, and from Dr. Khesina beginning on August of 1999, Tr. 204.

records for the period between 1998 and 2000.[6] The Court simply notes in passing that the ALJ carries the burden of explaining why even a retrospective diagnosis by the treating source is not given controlling weight.[7]

### 3. Drug and Alcohol Abuse

"An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). According to the C.F.R., the key factor "in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol." 20 C.F.R. § 404.1535(b)(1). "The plain text of the . . . regulation requires the ALJ first to determine whether [the claimant] is disabled. . . . The ALJ must reach this determination initially . . . using the standard five-step approach described in 20 C.F.R. § 404.1520 without segregating out any effects that might be due to substance use disorders." Brueggemann v. Barnhart, 348 F.3d 689, 695 (8th Cir. 2003).

---

[6] This "gap" is mentioned four separate times in the ALJ's decision. Tr. 18, 19, 20.

[7] It should also be noted that the fact that the treatment was interrupted should not discredit the treating source's definitive conclusions in this case. Plaintiff explained that she stopped seeing Dr. Conciatori because her insurance stopped paying for his services. Tr. 349. Even if plaintiff had failed to provide an explanation for the gap in treatment records, the Court notes our sister court's admonition criticizing "the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1299 -1300 (9th Cir. 1999) (quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)); see also Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir.1989) (same).

It is unclear whether or not plaintiff's alcoholism and drug abuse were reasons for the determination that she was not disabled at step three of the ALJ's analysis. While, for the most part, the opinion references plaintiff's substance abuse in the context of the residual functional capacity determination at step four, the ALJ's conclusion that "[i]n spite of the opinion of Dr. Conciatori, there is no evidence to the effect that absent drug and alcohol abuse, the claimant suffered from a major depressive disorder" appears to conflate the substance abuse analysis with the disability determination itself. To the extent that this was the case, the ALJ has committed reversible error. See, Brueggemann, 348 F.3d at 694 (2d Cir. 2003) ("The ALJ must base this disability determination on substantial evidence of [claimant's] medical limitations without deductions for the assumed effects of substance use disorders. The inquiry here concerns strictly symptoms, not causes . . ."); Frederick v. Barnhart, 317 F.Supp.2d 286, 293 (W.D.N.Y. 2004) (reversing ALJ's disability determination where "the ALJ never determined whether, absent alcohol abuse, plaintiff's mental impairments would still meet the severity of Listing 12.04 . . ."); Lunan v. Apfel, No. 98-CV-1942, 2000 WL 287988, *8 (W.D.N.Y., March 10, 2000) (reversing ALJ's disability determination where ALJ failed to determine whether plaintiff was disabled prior to finding that alcoholism was a contributing factor material thereto).

**C. Summary**

The ALJ's decisions to read conclusions into the Medical Expert's testimony that are not supported therein; to discredit the treating physician's conclusions because of his penmanship; and to fault plaintiff for failing to subpoena the treating physician; together with his failure to otherwise provide sufficient explanation for his decision not to give controlling or even substantial weight to the treating physician's opinion constitute reversible error. See, e.g.,

Schaal, 134 F.3d at 504 ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.").

## CONCLUSION

For these reasons the case is remanded for further proceedings consistent with this opinion. On remand, the ALJ shall have ninety days to make additional, reasonable efforts to clarify the medical basis for Dr. Conciatori's opinion and to evaluate that opinion in concert with any and all relevant evidence in the record in light of the treating physician rule. Furthermore, the ALJ is cautioned regarding the admissibility of retrospective opinions and the need to separately determine plaintiff's disability before assessing whether or not her alcohol and drug abuse constitute contributing factor material to that determination.

SO ORDERED.

Dated: Brooklyn, New York
January 2, 2008

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge